UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
UNITED STATES OF AMERICA                      :
                                              :     23-CR-0198-ALC
         -v-                                  :
                                              :
TERRY MITCHELL                                :
                                              :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN REPLY TO THE GOVERNMENT'S OPPOSITION OF DEFENDANT'S MOTION TO DISMISS**

**I.   The Court is not Precluded from Considering whether § 922(g)(1) Violates the Second Amendment.**

The government claims that the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), as well as the Second Circuit's decision in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013), forecloses Mr. Mitchell's challenge to § 922(g)(1) because these cases have reiterated that long-standing prohibitions on felons possessing firearms are presumptively lawful.  This is not so.

The language that the government seizes on in *Heller* and *McDonald* is non-binding dicta. In neither of those cases did the Supreme Court determine the constitutionality of felon-disarmament laws.  Instead, the Supreme Court itself warned that it "d[id] not undertake an exhaustive historical analysis today of the full scope of the Second Amendment" and noted that there would "be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Heller*, 554 U.S. at 626, 635.  To that end, even Justice Thomas, who wrote the majority opinion in *Bruen*, believed that this language from *Heller* and *McDonald* was dicta.  *See Voisine v. United States*, 579 U.S. 686, 715 (2016) (describing *Heller*'s discussion of felon-disarmament laws as "dicta").  Accordingly, *Heller* and *McDonald* did not resolve the question of whether felon-disarmament laws are constitutional. To the contrary, they only acknowledged that further analysis of those laws would be required to determine if their presumptive lawfulness stood up against the constitutional test later set out in *Bruen*.

For this reason, the Second Circuit's decision in *Bogle*, which is a one-paragraph opinion resting exclusively on the dicta in *Heller* and *McDonald*, and which did not apply any semblance of the historical analysis required post-*Bruen*, is not dispositive. *Bogle*, 717 F.3d at 281-82.  Again,

1

*Bruen* did not hold that felon disarmament statues were constitutional, as the sole issue before the *Bruen* Court was the constitutionality of New York's firearm licensing requirements. *See* 142 S. Ct. at 2122. Rather, *Bruen* set the standard requiring the government to prove that a challenged gun regulation is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. This Court must now apply the *Bruen* test to § 922(g)(1), as opposed to accepting the government's invitation to treat the question as already settled by cases in which it was never raised.

      II.      **The Second Amendment Protects the Right of "the People" to Keep and Bear Arms, not Just Law-Abiding Citizens.**

As the government concedes, where the validity of a restriction is challenged, Courts must begin by looking to the Second Amendment's plain text. Indeed, the Supreme Court in *Bruen* unequivocally stated that, "[w]hen the Second Amendment's *plain text* covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126 (emphasis added). Hence, the relevant question for the Court is whether the plain text of the Second Amendment protects Mr. Mitchell's right to possess a gun in his home for self-defense. That answer is yes.

The Second Amendment's plain text reads, in relevant part: "[T]he right of the people to keep and bear arms [] shall not be infringed." U.S. Const. amend. II. Mr. Mitchell, as an American citizen, is undoubtedly one of "the people" covered under the Second Amendment's plain text. As recognized by the Supreme Court itself, "the people protected by the Fourth Amendment, and by the First and Second Amendment, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that

community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). In other words, "the people" are not simply a subset of the American population deemed worthy of the protections set forth in the Bill of Rights. *See Heller*, 554 U.S. at 580 ("[I]n all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset.").

It bears repeating that this Court would not be alone in concluding that the Second Amendment's plain text includes prior felons within its protections. In *Range v. Attorney General United States of America*, 69 F. 4th 96 (3d Cir. 2023), the Third Circuit rejected the government's claim that only law-abiding, responsible citizens are protected by the Second Amendment. That decision was predicated on four findings. First, the Third Circuit noted that the criminal histories of the plaintiffs in *Heller*, *McDonald*, and *Bruen* were not at issue, so the Supreme Court's references to "law-abiding, responsible citizens" were mere non-binding dicta. *Id.* at 101. Second, the *Range* court stressed that limiting the Second Amendment's protections to only law abiding, responsible citizens would be inconsistent with other provisions of the Constitution that also reference "the people." *Id.* at 101-102. Third, the circuit court found guidance in then-Judge Barrett's dissenting opinion in a Seventh Circuit case where she explained that "all people have the right to keep and bear arms." *Id.* at 102. Finally, the Third Circuit stressed that the term law-abiding, responsible citizen was vague and erroneously devolved authority to legislators to decide whom to exclude from "the people," thereby giving legislatures unreviewable power to manipulate the Second Amendment. *Id.* at 102-103. For those reasons, the Third Circuit held that prior felons remain among "the people" protected by the Second Amendment. *Id.* at 103.

Similarly, in *United States v. Bullock*, 2023 WL 4232309, *21 (S.D. Miss. June 28, 2023), Judge Carlton Reeves of the Southern District of Mississippi ruled that, at step one of the *Bruen*

3

analysis, the plain text of the Second Amendment covered a felon's right to possess firearms in his home, despite prior convictions for aggravated assault and manslaughter. Like the Third Circuit, Judge Reeves reasoned that "the people" referred to in the Second Amendment and other constitutional provisions included all Americans. *Id.* at 20. Furthermore, Judge Reeves emphasized that *Bruen* step one requires courts to look at the conduct being regulated, not the status of the person performing the conduct. *Id.* at 20. And like Mr. Mitchell here, the defendant in *Bullock* was being charged with knowing possession of a firearm in his home – conduct that *Heller* affirmatively protects. *See id.*

Finally, in a recent opinion authored by Judge Rakoff of the Southern District of New York, he found that "[t]here is no basis for reading 'the people' in the text of the Second Amendment to exclude felons." *United States v. Davila*, 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023). While Judge Rakoff later opined that § 922(g)(1) held up under constitutional scrutiny, it remains the case that he held that felons were not categorically excluded from "the people" referenced in the plain text of the Second Amendment. This Court should adopt the reasoning set forth in *Range*, *Bullock*, and *Davila* and find that Mr. Mitchell remains amongst "the people" protected by the Second Amendment's plain text.[1]

---

[1] The only post-*Bruen* case that the government cites in support of its argument that felons are not protected by the plain text of the Second Amendment is *United States v. Jackson*, 69 F. 4th 495, (8th Cir. 2023). The Eighth Circuit, however, did not directly address whether felons are included among "the people" protected by the Second Amendment. Rather, the Eighth Circuit only concluded that § 922(g)(1)'s prohibition of felons possessing firearms is consistent with the Nation's historical tradition of firearm regulation. *Id.* at 502.

### III. The Government has not Met its Burden of Demonstrating that the Application of § 922(g)(1) is Consistent with the Nation's Historical Tradition of Firearm Regulation.

Where the Second Amendment's plain text covers an individual's conduct, the government, to justify the regulation of that conduct, "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Critically, "when a challenged regulation addresses a general societal problem that has persisted since the 18th Century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. Against this backdrop, the government has fallen far short of its burden of persuasion.

The government does not cite a single founding-era law barring people with felony convictions from possessing guns. Nor does it identify even one instance when a person in the founding era was specifically denied the right to possess a gun based on his criminal record. Tellingly, the government, in a separate case before the Fourth Circuit, has already conceded that colonial societies did not categorically prohibit convicted criminals from owning firearms. *See* U.S. Br. at *25, *United States v. Staten*, 2011 WL 1542053 (4th Cir. Apr. 25, 2011) ("As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms."); *see also Bullock*, 2023 WL 4232309, at *21 ("The government attorney prosecuting Mr. Bullock's case, like all of us dealing with *Bruen*'s fallout, was placed in an unenviable position. That is because in cases litigated not that long ago, the U.S. Department of Justice formally advanced the position that early American history did *not* support felon disarmament.") (citing the government's briefs in *United States v. Staten*, 2011 WL 1542053, at *25 (4th Cir. Apr. 25, 2011) and *United States v. Pettengill*, 2011 WL 1977759, at *27-28 (1st Cir. May 13, 2011)). This is also consistent with the findings of several jurists throughout the country,

including then-Judge Barrett. *See Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting) ("The best historical support for legislative power to permanently dispossess all felons would be founding-era laws explicitly imposing—or explicitly authorizing the legislature to impose—such a ban. But at least thus far, scholars have been unable to identify any such laws."); *United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011) ("18 U.S.C. § 922(g)(1) [] is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified."); *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) (noting states did not start to enact felon dispossession statutes until the early 20th century); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws."). The lack of distinctly similar historical regulation is thus strong evidence that § 922(g)(1) is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131.

Finding no distinctly similar historical regulation, the government attempts to meet its burden by invoking the following false historical analogies: (1) English legal tradition barring gun ownership for people who refused to renounce their faith; (2) racist Colonial regulations barring Native Americans and black people deemed "untrustworthy" or "dangerous" from owning guns; (3) Revolutionary War-time laws disarming perceived government defectors; and (4) proposals made during the ratification debates that were ultimately rejected in favor of the current language in the Second Amendment. But these analogies -- most of which the government acknowledges would not pass constitutional muster today -- fail to establish a distinctly similar historical tradition of felon disarmament laws. In fact, relying on problematic and dangerous historical traditions as the foundation for an argument that § 922(g)(1) is sound law only further illustrates the unconstitutional nature of the statute.

Notwithstanding the above, the Court should reject the government's proposed analogies for several additional reasons. First, the Supreme Court has already cautioned about relying on English common-law as a source of comparison. *See Bruen*, 142 S. Ct. at 2136 ("As with historical evidence generally, courts must be careful when assessing evidence concerning English common-law rights. The common law, of course, developed over time. And English common-law practices and understandings at any given time in history cannot be indiscriminately attributed to the Framers of our own constitution."). Second, a history of rejected proposals during the ratification debates in favor of the current language of the Second Amendment that protects the *unqualified* right of "the people" to keep and bear arms is itself evidence of § 922(g)(1)'s unconstitutionality. *See id.* at 2131 (evidence of unconstitutionality includes that the "Founders themselves could have adopted" regulations to address a problem but chose not to do so). Similarly, that American legislatures passed laws during the Revolutionary War disarming law-abiding citizens who were merely deemed disloyal to the government only furthers the point that this Nation has no historical tradition categorically distinguishing "criminals" from "non-criminals," for purposes of gun ownership. Finally, that colonial America practiced race-based discrimination in deciding who was worthy to own a firearm certainly should not be endorsed by this Court as a reason to uphold the constitutionality of § 922(g)(1).

In a last-ditch effort, the government also attempts to draw an analogy to American colonial laws resulting in capital punishment or estate forfeiture for felony crimes. But the government ignores something crucial: many people with felony convictions were not ultimately executed, and even if they were required to forfeit existing property, there were no laws prohibiting such people from obtaining new property after serving their sentences. As then-Judge Barrett observed, "The obvious point that the dead enjoy no rights does not tell us what the founding-era generation would

7

have understood about the rights of felons who lived, discharged their sentences, and returned to society. *See Kanter*, 919 F.3d at 462 (Barrett, J., dissenting). The government's invocation of felony punishment laws is therefore insufficient to establish a distinctly similar historical tradition of felon disarmament laws.

In short, the government has not met its burden of demonstrating that § 922(g)(1) is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Accordingly, the Court should dismiss Count One of the Indictment, as violative of Mr. Mitchell's Second Amendment rights.

### IV. Mr. Mitchell has Distinguished Himself from Wrongly Excluded Classes.

Even if the Court finds that § 922(g)(1) is constitutional on its face, that statute is still unconstitutional as applied to Mr. Mitchell.

As a threshold matter, to categorically preclude all felons from advancing as-applied challenges to § 922(g)(1), as the government suggests, would run afoul of even *Heller*'s dicta that felon dispossession statutes are "presumptively" lawful. That is because a presumption implies the ability to be rebutted. To be sure, at least five circuits, including pre-*Bruen*, have suggested that felon dispossession statutes remain open to as-applied challenges. *See United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("Although the Court may have qualified this approval by describing such longstanding bans [on felons possessing firearms] as 'presumptively lawful,' we assume that at most that description reserves the possibility of yet to be developed qualifications."); *Range v. Attorney General United States of America*, 69 F. 4th 96, 106 (3d Cir. 2023) ("Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him[.]"); *United States v. Moore*, 666 F.3d 313, 319 (4th Cir.

2012) ("Determining that § 922(g)(1) is valid on its face, however, does not resolve Moore's as-applied challenge. As we recognized in *Chester*, *Heller* seemed to leave this issue open. In fact, the phrase '*presumptively* lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'"); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) ("*Heller* referred to felon disarmament bans only as 'presumptively lawful,', which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge.'"); *Schrader v. Holder*, 704 F.3d 980, 991 (D.C. Cir. 2013) ("At several points in their briefs, plaintiffs appear to go beyond their argument that section 922(g)(1) is unconstitutional as applied to common-law misdemeanants as a class and claim that the statute is invalid as applied to Schrader specifically. Were this argument properly before us, *Heller* might well dictate a different outcome.").

Furthermore, the Supreme Court, when using the term "presumptively lawful" in other contexts, has concluded that such presumptively lawful conduct is rebuttable. *See United States v. Goodwin*, 457 U.S. 368, 384 n.19 (1982) ("Accordingly, while the prosecutor's charging decision is presumptively lawful . . . the defendant is free to tender evidence to the court to support a claim that enhanced charges are a direct and unjustifiable penalty for the exercise of a procedural right."); *Beth Israel Hosp. v. N.L.R.B.*, 437 U.S. 483, 492 (1978) ("The effect of these rules is to make particular restrictions on employee solicitation and distribution presumptively lawful or unlawful . . . subject to the introduction of evidence sufficient to overcome the presumption."). It necessarily follows that Mr. Mitchell must be permitted to rebut any presumptive validity of § 922(g)(1).

Here, the government represents that Mr. Mitchell's disqualifying felonies are three New York state convictions for criminal sale of and/or possession with intent to sell a controlled substance. It is undisputed that these felony convictions are non-violent offenses under New York law. *See People v. Steward*, 18 N.Y. 3d 493, 496 (N.Y. Ct. App. 2012) (noting the crime of attempted sale of a controlled substance is a non-violent felony under New York law); *People v. Tuff*, 156 A.D. 3d 1372, 1379 (N.Y. Sup. Ct. App. Div. 2017) (finding defendant convicted of N.Y. Penal Law § 220.39 for criminal sale of a controlled substance was a "nonviolent drug dealer."). The government's argument that drug crimes present a "risk" of violence does not change this fact. *See, e.g.*, *United States v. Martinez*, 991 F.3d 347, 352 (2d Cir. 2021) ("A crime of violence is defined . . . as a felony crime that either has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]"; U.S.S.G. § 4B1.2(a) ("The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that has an element the use, attempted use, or threatened use of physical force against the person of another[.]"). Accordingly, like the Third Circuit found in *Range*, this Court should find that § 922(g)(1) is unconstitutional as applied to non-violent felons like Mr. Mitchell. *See* 69 F.4th at 106 (finding the government did not meet its burden of demonstrating that § 922(g)(1) as applied to an individual with a non-violent felony conviction for false statement was consistent with the Nation's historical tradition of firearm regulation).

### V.     Conclusion

For the reasons stated herein, including those set forth in the memorandum in support of Mr. Mitchell's motion to dismiss, Mr. Mitchell respectfully moves the Court for an order dismissing Count One of the Indictment.

Dated: September 29, 2023

                                            Respectfully Submitted,

                                            */s/*_____
                                            **Kristoff I. Williams**

                                            Assistant Federal Defender
                                            Federal Defenders of New York
                                            52 Duane Street, 10th Floor
                                            New York, New York 10007
                                            Tel.: (212)-417-8791